The next case is People v. Perkins I think you dropped a piece of paper. Oh, thank you. Thank you. May it please the Court, I cancel. Mr. Perkins was alleged by the state to have walked into a resale shop where there were four or five gentlemen playing cards. Apparently, completely unprovoked, opened fire on these men. We're arguing that no reasonable jury would have believed the state's evidence. There was simply too much inconsistencies. And in fact, the jury didn't believe most of the state's evidence because they could not reach a verdict on the charge of murder or on two of the attempted murder charges. So they rejected some of the evidence, and we're saying that they should have simply rejected all of it. First of all, and these are not minor things, these are actually major things. They couldn't agree about – okay, first, the defendant was alleged to have come to the shop with a young man. He said, this is my son, if you have a problem with him, let me know. Well, first of all, the defendant doesn't have a son. The men in the shop couldn't agree on when the defendant first came in. One of them said it was daylight, one of them said it was dark. This was in December. One of them said, oh, it happened at least 730 or 8 o'clock. Well, it would have been dark, and another man said it was daylight. One of the men said, well, the defendant was in the shop with this young man for 15 or 20 minutes. Another man said he was in there for three minutes. One of the men said, we escorted him to the door and then we locked the door. Another one said, no, he just left on his own. The door was locked. The door wasn't locked. They couldn't agree on when the defendant was alleged to have returned. It was either between 10 minutes and 60 minutes. That's a broad range of time. I realize maybe they weren't sitting there watching their watches, but there's a big difference between 10 minutes and 60 minutes. He did return, though, right? Well, yes. Okay, so what difference does it make if it's 10 minutes or 60 minutes? Well, according to the state's case, this is not defendant's testimony at all, but according to the state's case, the point is that the witnesses couldn't agree on their stories, on the facts. And it does make a difference because if there are so many inconsistencies, you begin to question their whole testimony. They couldn't agree on if and when he returned the final time. Some of them said he stood at the door. Some of them said he came in. They couldn't agree on the number of shots that were fired. And I'll have to kind of concede that one because allegedly it was a semi-automatic weapon. I take it these inconsistencies were all argued to the jury in closing argument? Not as clearly as I would have liked. Or certainly could have been. Yes, they could have. But the most important piece of evidence that I don't think a reasonable juror would have rejected was the testimony of Cortez Hibbler, who was, at the time of the incident, completely unbiased. Apparently he knew the men in the shot, but he didn't have any grudge against him. He didn't even know the defendant at the time of the incident. He says he heard a loud argument, looked across the street, saw two men pushing the defendant down on the sidewalk. The defendant got up and started to walk to his car when these two men from the shot started firing on the defendant. The defendant retrieved a gun from his car and shot back. That's completely consistent with the defendant's testimony. So was self-defense a defense? Is what he's arguing. And it was submitted to the jury on that testimony? Yes. And the jury rejected it? Yes. Evidently. But that's kind of inconsistent with the jury's rejection of their inability to find him guilty or not guilty of the murder and the attempt murder. The inability of the jury to reach a verdict on murder and attempt, would that indicate a disagreement in the jury as far as intent as to those particular actions? Because they found the defendant guilty of the battery with a firearm and armed violence. Armed violence, yes. Yes. Yeah, I agree. I'm just saying that there were so many inconsistencies in their testimony, and they're all laid out in my brief, that because of all these inconsistencies, their testimony, the state's witness' testimony, was not believable. The other thing that I wanted to talk about was the sentence. He did not receive the minimum for either the armed violence or the aggravated battery. And I'm considering that the sentences had to run consecutive because the court found severe bodily harm. So they had to be consecutive. But he should have gotten the minimum. This man was 62 years old. He lived most of his life in the metro east area, particularly east St. Louis. He had almost no criminal record. And that in itself is an accomplishment. He was a college graduate. He was a Vietnam vet who had some post-traumatic stress disorder. While he was in Vietnam, he was a tunnel rat, and I'm sure your honors are familiar with how stressful that was for those people. When he came home from Vietnam, he had a huge, long history of service to his community. His degree was in sociology. He started a food pantry. He started a coach for kids program. He helped one young man get into the plumber's union. He helped his niece through several of her problems. The court did not take that into sufficient consideration in sentencing him. In truth, because the man is in his 60s, probably no matter what he gets, he's not going to spend much of his time outside of prison. The least he could get would be 31 years, right? Yes, even if it's reduced. 25 plus 6, and what he got was 40. Correct. But at least he would have a chance, perhaps. So I'm asking your honors, first of all, to reverse his convictions, and if your honors don't do that, at least reduce his sentence. Thank you. Thank you. Counsel? Thank you, your honors. Counsel, may it please the court, my name is Kelly Stacy, appearing on behalf of the people. On December 19, 2004, a defendant approached Dancy's resale shop with a fully loaded semi-automatic weapon that he retrieved from the trunk of his car. Before the evening was over, one man bled to death on the floor of the shop, another one nearly had his lower jaw blown off, and the third man was shot in the shoulder. The jury simply did not believe the defendant's claims of self-defense. There was absolutely no evidence that there was any weapons inside the resale shop, and, in fact, four of the men who were regular attendees of the card game, the longstanding weekly card game, testified. They were present in the shop that day. All four positively identified the defendant as the shooter. The defendant, who was a Vietnam combat veteran, had to have known the effect that a semi-automatic rifle would have upon a group of unsuspecting and unarmed men. When he finished the shooting, the defendant walked into the shop, apparently stepped over a dead body, stole $119 from the victims, and as he left, he said, if anybody tells who did this, I'm going to come back and kill everybody in here. Blood from the stolen money and blood on the defendant's jeans and boots matched that of the man lying dead on the floor of the shop. The jury heard from the defendant's own mouth how he fired shots into the shop that day. The defendant told the jury that he didn't know how much money he grabbed from the floor because combat happens in a snap. And he added, you don't think, you act. The jury believed that the defendant did act that day in an unprovoked shooting rampage, finding him guilty of armed violence, causing great bodily harm, and two counts of aggravated battery with a firearm. In reviewing the record in this case, it is clear that a rational jury could and did find the defendant guilty beyond a reasonable doubt. The defendant claims there were inconsistencies in the witness testimony, and the State would concede that there were some. I would regard them as minor inconsistencies in testimony. But it's up to the trial fact, the jury in this case, to resolve any of those inconsistencies in the testimony. The other consideration is, by the time this case went to trial, it was nearly four years after the date of the shooting. The defendant also challenges the circuit court's imposition of sentence on the armed violence category one weapon. The defendant was sentenced to 30 years, which was well within the 25-40 year mandate. There's no doubt that he inflicted great bodily harm on Mike Smith, who was shot in the chin. Sorry, Mike Foster. Mike was in the hospital for several months and was in a medically induced coma for nearly a month. He's permanently disabled as a result of his injuries, and he had to have two surgeries just to try to rebuild his chin. The jury also found the defendant guilty of aggravated battery with a firearm, class X felony, for which he was subject to six to 30 years. He was subject to mandatory consecutive sentencing on that. I think the defense concedes that. He received 10 years on the mandatory consecutive. The defendant last claims that the court did not give sufficient consideration to factors in mitigation. The record shows the circuit court considered factors in aggravation and in mitigation. I believe there were four live witnesses that testified on behalf of the defendant at sentencing. In addition, there were six letters that were offered on his behalf. The state acknowledges that the defendant had contributed considerably to the community. However, by the court indicating there's no question, he told the defendant, there's no question that you have a history of community service, doing many things for many people. The law is clear that if mitigation evidence is before the court, the court is presumed to have considered it. There's nothing raised by the defendant that indicates that the trial court did not consider that. The crimes that the defendant committed in this case are very serious, and the seriousness of the crimes is considered the most important factor in fashioning a sentence. There's no doubt that lives were changed on December 19th, 2004. The defendant had a choice that day. The people in that shop did not. The people respectfully request the court affirm the jury's verdict and the sentence imposed by the circuit court. Thank you. Thank you very much. Counsel? Your Honor, we don't disagree that the defendant actually fired the gun. But the question is, did he do it in self-defense? We're arguing that it was unreasonable for the jury to find that he did not. I'm sorry, I didn't hear the last part of that. We're arguing that it was unreasonable for the jury to disregard the self-defense. Thank you. Thank you, counsel. We appreciate the briefs and arguments. Both counsel will take the case under advisement. There's one no further oral.